UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TEKFOR, INC., | ) | CASE NO. 5:12 cv 1341 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| SMS MEER SERVICE, INC., | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the parties' cross motions for summary judgment regarding a dispute about repairs made by defendant to a forging press owned by plaintiff. Plaintiff Tekfor, Inc. (Tekfor) moves for partial summary judgment on liability. (Doc. No. 60.) Defendant SMS Meer Service, Inc. (SMS) has opposed plaintiff's motion (Doc. No. 67), and Tekfor has replied (Doc. No. 68).

Defendant SMS moves for summary judgment on the grounds that Tekfor's complaint is not properly before the Court because: 1) the parties expressly agreed to submit their dispute in this case to arbitration; and 2) if the dispute is subject to litigation and not arbitration, the parties expressly agreed that any such suit would be brought only in certain federal or state courts located in Pennsylvania. (Doc. Nos. 61 and 61-26.) Plaintiff has opposed defendant's motion (Doc. No. 65), and SMS has replied (Doc. No. 69).

The motions are fully briefed and ripe for decision. For the reasons contained herein, this case is transferred to the United States District Court for the Western District of Pennsylvania.

## I. FACTUAL AND PROCEDURAL BACKGROUND

SMS's motion for summary judgment raises the threshold issue of whether this matter is properly before the Court based on the terms and conditions that control the parties' transactions concerning defendant's repair of plaintiff's forging press in late 2010 and 2011. Plaintiff's motion for summary judgment on defendant's liability cannot be addressed until the Court resolves defendant's motion. Accordingly, the Court will limit its consideration of the facts to the issue of whose terms and conditions control.

**A.      Tekfor Acquires the Eumuco**

The following undisputed facts are drawn from the parties' pleadings and documents submitted in support of the summary judgment motions. Plaintiff Tekfor produces parts and components for the automotive industry. Defendant SMS provides repair and service parts to automotive suppliers such as Tekfor.

Around December 2003, Tekfor purchased a used mechanical forging press, known as the Eumuco SP250c (Eumuco), from Tekfor's parent company. The Eumuco was installed at Tekfor's facility in Wooster, Ohio, and used to manufacture and provide parts to companies that supply transmissions to automotive original equipment manufacturers. From 2003 to 2010, SMS provided service and spare parts to Tekfor for the Eumuco. (Complaint [Compl.], Doc. No. 1 ¶ 20; Amended Answer [Am. Answr.], Doc. No. 25 ¶ 20.)

2

Tekfor began experiencing problems with the Eumuco late in 2010 and contacted SMS regarding repairs. SMS sent Andreas Richter (Richter) to assess the Eumuco's condition. Richter concluded that certain bushings and rings were damaged, and recommended that replacement parts be purchased and that SMS repair the Eumuco.[1]

B.         Course of dealing between Tekfor and SMS

During the time that SMS serviced the Eumuco for Tekfor between 2003 and late 2010, the parties followed the pattern that Tekfor issued a purchase order which referenced,[2] but did not include or attach, Tekfor's terms and conditions. In response, SMS issued a purchase order acknowledgment that both referenced[3] and attached SMS's terms and conditions. Prior to the Eumuco's troubles in late 2010, there was no dispute between Tekfor and SMS regarding the terms and conditions of their transactions. (Compl. ¶ 24; Am. Answr. ¶ 24.)

After SMS recommended parts and repairs for the Eumuco in late 2010, Tekfor began issuing purchase orders to SMS to accomplish the repair. (Compl. ¶ 33; Am. Answr. ¶ 33.) Some of Tekfor's purchase orders were for parts and some were for service.[4] There is no genuine dispute that the transactions between Tekfor and SMS to

---

[1] Compl. ¶¶ 26-31; Am. Answr. ¶¶ 28-31.

[2] "We wish to place an Order under our Terms of Purchase." (*See e.g.,* Doc. No. 61-15).

[3] "Your order will be processed in accordance with our terms and conditions . . . ." (*See e.g.*, Doc. No. 1-2 at 22.) All references to page numbers are to the page identification numbers generated by the Court's electronic docketing system.

[4] The purchase orders and acknowledgments at issue in this case are collected as exhibits to the Affidavit of Kevin Cox [Cox Aff.], Doc. No. 61-10 ¶¶ 10-11 at 3961.)

repair the Eumuco in late 2010 and 2011 followed the same pattern as the parties' course of dealing since 2003.[5] (*Id.*)

C.      **SMS's Motion to Dismiss**

SMS earlier moved to dismiss Tekfor's complaint on the grounds that SMS's terms and conditions control the parties' agreement, and according to those terms and conditions, the instant dispute is subject to arbitration and the law and jurisdiction of the courts in Pennsylvania. The Court denied that motion because the factual record was entirely undeveloped, and the resolution of whose terms applied required consideration of certain facts that could not be determined at that time. (Doc. No. 11.) Now that the factual record has been developed, SMS again argues (on summary judgment) that its terms and conditions control the parties' dispute regarding repair of the Eumuco.

## II. DISCUSSION

A.      **Summary Judgment Standard of Review**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if its resolution affects the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. *Id.*

---

[5] All of the transactions followed the same pattern with one variation in purchase order number 33537. Tekfor argues that this transaction alone, discussed in greater detail *infra*, establishes that Tekfor's terms and conditions control.

The moving party must provide evidence to the court which the movant believes demonstrates that there is the absence of a genuine dispute as to any material fact. Once the moving party meets this initial burden, the opposing party must come forward with specific evidence showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Anderson*, 477 U.S. at 250.  The nonmoving party may oppose a summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" *Celotex Corp. v. Catrett*, 477 U.S. at 324. General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *See Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Further, "'[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party].'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (*quoting Anderson*, 477 U.S. at 252).

When considering a motion for summary judgment, the Court must view all facts and evidence, and inferences that may be reasonably drawn therefrom, in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962). However, the purpose is not to weigh evidence or determine the truth of a matter, but to determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

In summary, the district court's review on summary judgment is a threshold inquiry of determining whether there is the need for a trial due to genuine

5

factual issues that must be resolved by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250. Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003).

**B.        Choice of Law**

Plaintiff's terms and conditions provide for the application of Ohio law. (Doc. No. 1-1 at 21, § 12(1)). Defendant's terms and conditions provide for the application of Pennsylvania law. (*See e.g.* Doc. No. 61-10 at 4203, § 11a.) The threshold issue in this case is which parties' terms and conditions control. Before the Court can reach that issue, it must determine which law governs that analysis.

Federal courts sitting in diversity utilize the choice-of-law provision of the forum state. *The Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 692 (6th Cir. 2013) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1447 (1941)); *Moore v. Weinstein Co. LLC*, 545 F. App'x 405, 410-11 (6th Cir. 2013). "Ohio has adopted the Restatement (Second) of Conflict of Laws, under which the court must apply the law of the state that has the most significant contacts to the dispute. *Morgan v. Biro Mfg. Co., Inc.,* 15 Ohio St.3d 339, 341-42, 474 N.E.2d 286[, 288-89] (1984))." *Newberry v. Silverman*, No. 1:14 cv 313, 2014 WL 4093143, at * 2 (S.D. Ohio Aug. 18, 2014). Like Ohio, Pennsylvania courts have adopted the approach of the Restatement (Second) of Conflicts of Laws. *Toll v. Tannebaum*, 982 F. Supp. 2d 541, 550 (E.D. Pa. 2013). Under that approach in a contract dispute, the state with the most

significant relationship to the contract has the most significant relationship to the dispute. *See Int'l Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 604-05 (6th Cir. 1996); *Schulke Radio Prods., Ltd. v. Midwestern Broadcasting, Co.,* 453 N. E. 2d 683, 685 (Ohio 1983); *Toll*, 982 F. Supp. 2d at 550

Defendant is located in Pennsylvania, and plaintiff is located in Wooster, Ohio. Plaintiff's purchase orders and defendant's acknowledgments were sent between Tekfor in Ohio and SMS in Pennsylvania. However, the Eumuco is located in plaintiff's plant in Ohio, and the performance of the contract—the repairs to the Eumuco—took place Ohio.

Based on these undisputed facts, the Court concludes that Ohio has the most significant contacts to the contract and the dispute, and therefore Ohio law should apply to the analysis of the threshold issue of whether Tekfor's or SMS's terms and conditions apply.

**C.      Sale of Goods or Services**

This dispute over repair of the Eumuco involves both goods and services. The question of which parties' terms apply to a sale of goods is governed by Ohio Rev. Code § 1302.10—Ohio's "battle of the forms provision."[6] Contracts for services are governed by common law contract principles. *PHD, Inc. v. Coast Bus. Credit*, 147 F. Supp. 2d 809, 816 (N.D. Ohio 2001) (contract for services does not involve sale of goods and is governed by common law contract principles, not Article 2 of the U.C.C.).

---

[6] Chapter 1302 of the Ohio Revised Code, the statutory codification of Article 2 of the U.C.C., applies to the sale of goods. Ohio Rev. Code § 1302.02. Section 1302.01(A)(8) defines goods as: "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities, and things in action. . . ."

7

Ohio courts that have considered the applicability of U.C.C. Article 2, as codified in Ohio Rev. Code Chapter 1302, to mixed contracts for goods and services have applied a test known as the "predominant factor" or "predominant purpose" test. *Mecanique C.N.C., Inc. v. Durr Envt'l, Inc.,* 304 F. Supp. 2d 971, 976 (S.D. Ohio 2004).[7]

> This test was first promulgated in *Allied Industrial Service Corp. v. Kasle Iron & Metals, Inc.,* 62 Ohio App. 2d 144, 405 N.E. 2d 307 (Ohio Ct. App. 1977):
>
>> [W]e adopt the following approach developed in a case such as the one before us which involves a mixed goods and services contract: the test for the inclusion in or the exclusion from sales provisions is whether the predominant factor and purpose of the contract is the rendition of service, with goods incidentally involved, or whether the contract is for the sale of goods, with labor incidentally involved.
>
> 405 N.E.2d at 310 (holding that plaintiff "was selling its services in the design and installation of a pollution control system, and that the goods ordered and installed, i.e. the particular filters, ductwork, hood, etc. were incidental to the labor").

*Id.*

Whether a mixed contract predominantly involves goods or services is ordinarily a question of fact. However, if there is not a genuine dispute of material fact regarding the division between goods and services, then the Court may rule as a matter of law whether the contract is governed by Article 2 of the U.C.C. *Mecanique,* 304 F. Supp. 2d at 976-77 ("A jury, however, should only resolve this issue if there is a true factual dispute, not if the division between goods and services merely involves a close call."). A

---

[7] Pennsylvania law is in accord. *See Turney Media Fuel, Inc. v. Toll Bros., Inc.*, 725 A.2d 836, 840 (Pa. Super. Ct. 1999) (Article 2 of the U.C.C. governs transactions in goods. When the "transaction involves predominantly the rendition of services, the fact that . . . goods may be involved in the performance of the contract does not bring the contract under the code.") (quoting *Whitmer v. Bell Tel. Co. of Pa.*, 522 A.2d 584, 587 (1987)).

8

comparison of the cost of goods to the cost of services "can indicate whether goods or services predominate." *Eaton Corp. v. Taylor-Winfield Corp.,* No. 62361, 1993 WL 267113, at *2 (Ohio Ct. App. July 15, 1993) (60% of contract price for service) (citing *Lincoln Pulp & Paper Co., Inc. v. Dravo Corp.*, 436 F. Supp. 262 (N.D. Me. 1977)). The burden of proving that a contract is primarily for the purchase of goods is on the party who asserts the contract is governed by Ohio Rev. Code § 1302. *Renaissance Techs. v. Speaker Components, Inc.*, No. 21183, 2003 WL 118509, at *1 (Ohio Ct. App. Jan. 15, 2003) (citing *Eaton Corp.*, 1993 WL 267113, at *2).

Tekfor and SMS may disagree as to the conclusion the Court should reach, but there is no genuine dispute as to the facts regarding the purchase orders, acknowledgments and invoices between Tekfor and SMS for the repair of the Eumuco. It is apparent from Tekfor's pleadings that SMS was hired to repair the Eumuco, not simply to provide parts. It is true that certain parts were required to effectuate the repair, but Tekfor was not purchasing parts from SMS, Tekfor was purchasing the repair of the Eumuco to good operating condition and the parts were incidental to the repair. *See Valleaire Golf Club v. Conrad*, (No. 03CA0006-M, 2003 WL 22900451, at *1-2 (Ohio Ct. App. Dec. 10, 2003) (while nearly 50% of contract price was attributable to cost of materials and piping essential to the contract, the "real thing" plaintiff wanted was for defendant to install the irrigation system). The incidental role of parts to service in the Eumuco repair is also apparent from the relative cost of each. SMS invoiced Tekfor a total of $228,839.24 for the work on the Eumuco in late 2010 and 2011. Of that amount, $173,394.00—75%—was for service based on SMS's quoted hourly service rates, not parts. (*See* Cox Aff. ¶¶ 12-14, at 3962.)

9

The Court concludes that there is no genuine dispute of fact regarding the division of goods and services with respect to the transactions between Tekfor and SMS in late 2010 and 2011 for repair of the Eumuco. SMS's services to repair the Eumuco, not the parts needed for the repair, predominate. Tekfor has failed to establish that the sale of goods predominated. Accordingly, the determination of which parties' terms and conditions apply are governed by common law contract principles and not by Ohio Rev. Code § 1302.

### D.        SMS's Terms and Conditions Apply under Ohio Contract Law

From a factual standpoint, there is no genuine dispute that Tekfor did not send a copy of its terms and conditions to SMS with its purchase orders during the time that SMS serviced the Eumuco between 2003 and 2010, or in late 2010 and 2011 for the repair to the Eumuco at issue in this case.[8] There is also no dispute that each time that SMS acknowledged a Tekfor purchase order, both from 2003 to 2010 and in late 2010 and 2011, SMS sent Tekfor a copy of SMS's terms and conditions with its acknowledgment.[9] But on these undisputed facts, the parties have very different views as to contract formation and whose terms and conditions apply.

---

[8] *See* Deposition of Kevin Weldi [Weldi Depo.], Doc. No. 62-1 at 4396-97 and 4415; Tekfor's Response to SMS's Request for Admissions Nos. 3 and 4, Doc. No. 61-3 at 3848-49 (". . . Tekfor cannot confirm that any of its current or former personnel did or did not send Tekfor's "Terms of Purchase" and/or "Purchase Terms" at any time to SMS Meer."); Tekfor's Opposition to SMS's Motion for Summary Judgment, Doc. No. 65 at 5451 ("Even though Purchase Orders issued by Tekfor did not have its Terms of Purchase physically attached, the Purchase Orders reference Tekfor's Terms of Purchase, make clear that Tekfor's Terms of Purchase apply, and the parties have common knowledge of Tekfor's Terms of Purchase.")

[9] Cox Aff. ¶ 8, at 3961 ("[I]t was SMS's standard business practice to include its terms and conditions, Forms 100-T-7 and/or 100-T-9, with the Quotations and Acknowledgements that it sent to Tekfor."); s*ee*

*1.* *Ohio Contract Law*

An enforceable contract consists of a promise or a set of promises. *See Kostelnik v. Helper,* 770 N.E.2d 58, 61 (Ohio 2002); *J. Bowers Const. v. Gilbert*, -- N.E.3d--, No. 27044, 2014 WL 4088098, at *2 (Ohio Ct. App. Aug. 20, 2014) (quoting *Kostelnik,* 770 N.E.2d at 61). Under Ohio law, the essential elements of a contract are offer, acceptance, consideration, and a meeting of the minds or mutual assent. *Id.; Shafer v. P.S.I Paper Sys., Inc.,* 61 F. App'x 949, 952 (6th Cir. 2013).

In Ohio case law, "meeting of the minds" and "mutual assent" are used interchangeably. *Advance Sign Group, LLC v. Optec Displays, Inc.*, 722 F.3d 778, 784 (6th Cir. 2013) (citing *Costner Consulting Co. v. U.S. Bancorp,* 960 N.E.2d 1005, 1009-10 (Ohio Ct. App. 2011)). "A meeting of the minds entails an agreement of the parties to be bound by their promises." *Shafer,* 61 F. App'x at 952 (citing *Cuyahoga Cnty. Hosps. v. Price*, 581 N.E.2d 1125, 1128 (Ohio Ct. App. 1989)). This agreement may be made in whole or in part by written or spoken words, or by other acts or failure to act. *Advance Sign Group,* 722 F.3d at 784 (quoting *Costner Consulting*, 960 N.E.2d at 1010)). Whether there has been a meeting of the minds is a question of fact determined from all the relevant facts and circumstances. *Id.*

A valid contract must be "specific as to its essential terms." *Scotts Co. v. Central Garden & Pet Co.*, 403 F.3d 781, 788 (6th Cir. 2005) (quoting *Alligood v. Procter & Gamble Co.,* 594 N.E.2d 668, 669 (Ohio Ct. App. 1991)). Parties cannot enter an enforceable contract unless they come to a meeting of the minds on the essential terms of the agreement. *Advance Sign Group,* 722 F.3d at 784 (quoting *Alligood,* 594 N.E.2d at

*also* Cox Aff. ¶¶ 9-11.

11

669 (citing *Noroski v. Fallet*, 442 N.E.2d 1302, 1304 (Ohio 1982))). Essential terms include consideration, quantity, and price. *Alligood,* 594 N.E.2d at 669.

2. *Agreement for Repair Service of the Eumuco*

The agreement between the parties to repair the Eumuco in late 2010 and 2011 consisted of a series of purchase orders. The primary purchase order issued by Tekfor to accomplish repair of the Eumuco was purchase order number 33548 (PO 33548). (Doc. No. 61-15.)

PO 33548 begins with the statement: "We wish to place an Order under our Terms of Purchase."[10] (Compl. ¶ 22; PO 33548.) Like all of Tekfor's purchase orders to SMS, Tekfor's terms and conditions were not attached to, or provided with, PO 33548 received by SMS.[11] However, according to Tekfor's Rule 30(b)(6) witness, Kevin Weldi, Tekfor's terms and conditions were available on its website and there was "common knowledge of [Tekfor's] terms of purchase." (Weldi Depo. at 4415.)

The content of PO 33458 stated: MANPOWER AND PARTS TO FIX THE EUMUCO THIS IS AN ESTIMATE. (Capitalization in original.) The estimated amount on the face of PO 33458 is $500.00. PO 33458 contained no essential terms, such as hourly rates for the "manpower" to repair the Eumuco, or other specific terms that could be accepted by SMS to form a contract. *See Alligood,* 594 N.E.2d at 669. The use of the word "estimate" indicates an invitation to engage in negotiations, and not an offer

---

[10] No document entitled "Terms of Purchase" appears in the record. However, Exhibit A to the complaint is a seven page document titled "Purchase Conditions." (Doc. No. 1-1.)

[11] Weldi Depo. at 4420.

to enter into a contract. *See Dyno Const. Co. v. McWayne, Inc.* 198 F.3d 567, 574 (6th Cir. 1999).

SMS acknowledged PO 33548 "for services to be provided" (Doc. No. 61-10 at 4197-4203.) The acknowledgment contained specific terms for the repair service, including normal hourly service rates for technical service ($130/hr), mechanical service ($85/hr), and cost for equipment and tools (cost + 10%), and further provided that "all other rates and expenses [would be charged] in accordance with SMS-Meer US Terms and Conditions, Form 100T9 (10-09)," which was attached to the acknowledgment (Doc. No. 61-10 at 4198 and Weldi Depo. at 4421-22 and 4486-89.)

Within the hour after sending the initial acknowledgment, SMS followed-up with an e-mail to Tekfor that stated Form 100-T-9 provided with the acknowledgment of PO 33548 was the incorrect terms, and attached the correct terms for service—Form 100-T-7. (Doc. No. 61-10 at 4201-3; Weldi Depo. at 4422-23 and 4490-92.) SMS's terms and conditions for service contain specific rates for travel time and premium service rates for overtime, holiday and weekend work. The premium service rates were based on the normal hourly service rates contained in the acknowledgment, such as: overtime and/or work between 6:00 p.m. and 6:00 a.m. (1.5 x the applicable Service Rate); Saturday work (1.5 x the applicable Service Rate); Sundays and holidays (2.0 x the applicable Service Rate). (*Id.*)

Unlike Tekfor's PO 33548, which contained no specific terms that could be accepted by SMS, SMS's acknowledgement and attached terms and conditions contained specific terms—SMS's normal hourly rates and premium service rates for servicing the Eumuco—which could be accepted by Tekfor. There is no genuine dispute

13

that Tekfor did not object or make a counteroffer. The parties demonstrated a meeting of the minds on SMS's acknowledgment and attached terms and conditions of PO 33548 by performance. SMS proceeded with repairs to the Eumuco working side-by-side with Tekfor personnel. SMS invoiced Tekfor for service at the rates contained in SMS's acknowledgment of PO 33548 and SMS's attached terms and conditions, and there is no dispute that Tekfor paid for the repair services based on those rates.[12]

Tekfor argues that its PO 33548, not SMS's acknowledgment, constituted the offer for repair service. Even though Tekfor's purchase order contained an open price term, Tekfor contends that PO 33548 constituted an offer because the Eumuco repair in late 2010 was an "emergency repair" and Tekfor intended for SMS to perform the repair services, and because SMS had "common knowledge" of Tekfor's rates due to the long course of dealing between the parties. Tekfor maintains that because Tekfor's PO 33548 constituted an offer, Tekfor's referenced terms and conditions control. But even if Tekfor's non-specific purchase order could be construed as an offer, SMS responded with an acknowledgment that contained specific changes to the terms of Tekfor's offer. A response to an offer with a change of terms constitutes a rejection of the offer and a counteroffer. *Shapnick v. LCA-Vision, Inc.*, No. 1:03 cv 71, 2005 WL 1364633, at *4 (S.D. Ohio June 8, 2005) (citing *Foster v. Ohio State Univ.* 534 N.E.2d 1220, 1222 (Ohio Ct. App. 1987) (citing Restatement (Second) of Contracts (1981) 145, Section 59) and

---

[12] SMS issued two invoices to Tekfor for service to the Eumuco pursuant to PO 33548, the first for $40,165.45 and a second for $133,228.55. (Cox Aff. ¶¶ 13-17 at 3962 and at 4229-4234.) Both invoices contain itemized statements for service rates contained in SMS's acknowledgment of PO 33458 and SMS's terms for service, Form 100-T-7, provided with that acknowledgement. There is no genuine dispute that Tekfor did not object to the rates in these invoices and paid the first in full and made a partial payment on the second. (*Id.*)

*Garrison v. Daytonian Hotel*, 663 N.E.2d 1316, 1318 (Ohio Ct. App. 1995))). Tekfor did not object to SMS's counteroffer, but accepted and objectively demonstrated assent by having SMS go forward with the repair work, and by paying the regular service rates stated in SMS's acknowledgement and premium service rates contained in SMS's terms and conditions for service. (Cox Aff. ¶¶ 13-17 at 3962 and at 4229-4234.)

Accordingly, Court finds that there is no genuine dispute that SMS's acknowledgement of Tekfor's PO 33548, which included SMS's terms and conditions for service (Form 100-T-7), constituted an offer, or at least a counteroffer, which was accepted by Tekfor. Further, the parties reached a meeting of the minds as to those terms and conditions that was manifested by their mutual performance. There is no genuine dispute of material fact as to the terms that govern the service requested in PO 33548, and no reasonably jury could conclude that Tekfor's terms and conditions applied to PO 33548. Rather, the Court concludes that SMS's terms and conditions apply to SMS's repair service for the Eumuco.

### 3. *Incidental Parts for Repair of the Eumuco*

Tekfor admits that the primary purchase order for repair service of the Eumuco is PO 33548,[13] which the Court has concluded is controlled by SMS's terms and conditions. Further, the Court has applied Ohio's predominant purpose test to the series

---

[13] Tekfor's Answer to Interrogatory No. 12, Doc. 61-3 at 3853-54: "SMS Interrogatory No. 12: Identify all documents that you contend evidence, constitute, or supply the terms of the "agreement" referenced in Paragraphs 76 ["Tekfor and SMS Meer entered into an agreement for SMS Meer to repair the Eumuco machine."] and 79 ["SMS Meer's failures constitute a breach of its agreement with Tekfor."] of the Complaint.

Answer: On November 24, 2010 Purchase Order No. 33548 was issued regarding Service of the Eumuco. Tekfor's "Purchase Terms" were applicable to that transaction. Additionally, all other Purchase Orders issued in connection with that service, including those for specific parts, are applicable."

of purchase orders—the agreement—between Tekfor and SMS and concluded that repair service, not parts incidental to the repair, dominate the agreement. The purchase orders for parts to effectuate repair of the Eumuco are incidental to PO 33458, and not subject to separate analysis regarding controlling terms and conditions.

There is one purchase order for parts—Tekfor purchase order number 33537 (PO 33537)—that Tekfor argues proves that Tekfor rejected SMS's terms and conditions and that SMS accepted Tekfor's terms and conditions. The parties do not dispute the facts surrounding that purchase order just the legal ramifications.[14]

---

[14] Two quotations were issued by SMS to Tekfor for a ring and temperature probes to repair the Eumuco. Both quotations included SMS's terms and conditions, Form 100-T-9. (Weldi Depo. at 4412-14). Tekfor issued PO 33537 for a ring and temperature probes on November 23, 2010 based on those quotations. (Weldi Depo. at 4414-16.) Like all of Tekfor's purchase orders, PO 33537 referenced ("We wish to place an Order under our Terms of Purchase"), but did not attach or include, Tekfor's terms and conditions. (*See id.*) In response, SMS sent two acknowledgments to PO 33537 on November 24, 2010, one for the ring and one for the thermometers; both acknowledgments attached SMS's terms and conditions for the sale of goods. (Weldi Depo. at 4416-17.)

After issuing PO 33537, Tekfor issued a purchase order modification for PO 33537 on November 30, 2010. (Weldi Depo. at 4418.) Unlike the original purchase PO 33537, Tekfor's terms and conditions are not referenced in the modification, (Doc. No. 62-1 at 4482-83), and Tekfor's terms and conditions were not attached or included with the modified order. (Weldi Depo. at 4418-19.) SMS issued an acknowledgment for the revised purchase order. (Weldi Depo. at 4419.) The acknowledgment for the modified PO 33537 references SMS's terms and conditions ("Your order will be processed in accordance with our terms and conditions per SMS Meer Service Inc. Form 100-T-9. . . ), but it does not appear from the record that SMS's acknowledgment for the revised purchase order attached SMS's terms and conditions. (Doc. No. 62-1 at 4484.)

One day later, on December 1, 2010, SMS sent an e-mail to Tekfor. (Doc. Nos. 67-19 and 69-1.) The email stated in relevant part: "We received your PO 33537 and need someone to review the attached document before we can send an order acknowledgment and get this process of getting your parts to you." (Doc. Nos. 67-19 at 7725 and 69-1 at 7833.) The attached letter from James Booth at SMS to Karl Huber at Tekfor stated as follows:

> Your P.O. [33537] referenced or included your Standard Terms and Conditions of Purchase. Our Quotation to you was based on our Terms and Conditions (T&C) and we have to ensure that we have the common understanding that only our T&C are part of our agreement with you. Please find them attached to this letter again for your information.
>
> If you agree that our enclosed T&C are the only ones applying to this purchase, please sign below and return by email or fax. Upon receipt, we will provide an Order Acknowledgment and processing your Purchase Order [number 33537].

(Doc. Nos. 67-19 at 7726 and 69-1 at 7834.)

Tekfor contends that because it did not sign and return a letter to SMS regarding terms and conditions for PO 33537, SMS assented to Tekfor's terms and conditions and those terms and conditions control the entire series of purchase orders between the parties to accomplish repair of the Eumuco. Tekfor's argument is unavailing. First, Tekfor's argument regarding the exchange of documents between Tekfor and SMS as to PO 33537 could only affect that purchase order for particular parts, not the entire transaction for repair service to the Eumuco. Further, this purchase order for parts, like all the purchase orders for parts incidental to repair of the Eumuco, is subject to the same analysis as PO 33548, the primary purchase order for service of the Eumuco in a series of transactions dominated by repair service, and not parts required for the repair.

    4.  *Rayco Mfg. v. Deutz Corp. does not Control*

In opposing defendant's motion for summary judgment, Tekfor argues that the application of *Rayco Mfg. v. Deutz Corp.*, No. 5:08 cv 74, 2008 WL 2433823 (N.D. Ohio June 12, 2008), requires the Court to conclude that Tekfor's terms and conditions apply. But, *Rayco* is distinguishable on the facts. *Rayco* involved the sale of goods—engines—and was controlled by Ohio Rev. Code. § 1302. In contrast, in applying the predominant purpose test under Ohio law to this case, the Court has concluded that the predominant purpose of the transactions between Tekfor and SMS was for repair service to the Eumuco, and that the parts required for the repair were incidental to their

---

It is undisputed that Tekfor did not sign or return Mr. Booth's letter and that SMS processed PO 33537. (Cox Depo. at 5928.) Tekfor argues that the fact that SMS sent the letter at all demonstrates that SMS was unsure whose terms and conditions controlled, and the fact that Tekfor did not sign and return the letter demonstrates that Tekfor did not assent to SMS's terms and conditions. Further, by proceeding to order parts and repair the Eumuco, Tekfor concludes that SMS assented to Tekfor's terms and conditions for all purchase orders issued to repair the Eumuco.

agreement. As a consequence, the common law contract principles, not Ohio Rev. Code § 1302 or *Rayco*, apply to the Court's analysis.

E.   **Transfer to the United States District Court for the Western District of Pennsylvania.**

The Court has concluded that SMS's terms and conditions control the series of purchase orders between SMS and Tekfor, the predominant purpose of which was to accomplish repair of the Eumuco. SMS's terms and conditions provide that "[A]ny suit or litigation pertaining to this Agreement shall be commenced in either the Court of Common Pleas of Allegheny County, Pennsylvania, or in the United States District Court for the Western District of Pennsylvania. In the event of disputes, arbitration will be the first remedy." (Doc. No. 61-10, ¶ 11(a) at 4203.)

Defendant's motion for summary judgment seeks dismissal of plaintiff's complaint with prejudice for failure to follow the arbitration clause in SMS's terms and conditions and for bringing this case in the Northern District of Ohio instead of the Western District of Pennsylvania. However, the parties had a bona fide dispute over the threshold question of whether Tekfor's or SMS's terms and conditions apply. Dismissal of plaintiff's complaint with prejudice is not an appropriate outcome when neither party could know the proper venue for their dispute before the Court resolved the issue of whose conditions apply.

28 U.S.C. § 1404(a) provides that a district court may transfer any civil action to any other district or division where the case could have been brought or to any district or division to which all parties have consented. Pursuant to 28 U.S.C. § 1391, this action could have been brought in the Western District of Pennsylvania. Defendant

resides in the Western District of Pennsylvania, and because SMS's terms and conditions control the parties' agreement to repair the Eumuco, the parties have consented to litigation in that district.

Accordingly, the Court concludes that the United States District Court for the Western District of Pennsylvania is the appropriate district court venue for resolving the merits of the parties' dispute, including the question of whether their dispute may be subject to arbitration. Therefore, pursuant to 28 U.S.C. § 1404(a), this case shall be transferred to the United States District Court for the Western District of Pennsylvania.

### III. CONCLUSION

For the reasons contained herein, the Court ORDERS that this case be transferred to the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). The Court declines to consider the merits of plaintiff's motion for summary judgment, or defendant's motion for summary judgment as to whether the parties' dispute is subject to arbitration.

**IT IS SO ORDERED**.

Dated: October 27, 2014

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**